## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

GREG SMITH, Individually and on Behalf of
All Others Similarly Situated,

                Plaintiff,

     vs.

PHH CORPORATION, JAMES O. EGAN,
JANE D. CARLIN, JAMES C.
NEUHAUSER, CHARLES P. PIZZI, KEVIN
STEIN, CARROLL R. WETZEL, JR., and
ROBERT B. CROWL,

                Defendants.

Case No.:   1:18-cv-8396

**CLASS ACTION COMPLAINT
FOR VIOLATIONS OF SECTIONS
14(a) AND 20(a) OF THE
SECURITIES EXCHANGE ACT
OF 1934**

**JURY TRIAL DEMANDED**

Plaintiff Greg Smith ("Plaintiff"), by his undersigned attorneys, alleges upon personal knowledge with respect to himself, and information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.    This action is brought as a class action by Plaintiff on behalf of himself and the other public holders of the common stock of PHH Corporation ("PHH" or the "Company") against the Company and the members of the Company's board of directors (collectively, the "Board" or "Individual Defendants," and together with PHH, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), SEC Rule 14a-9, 17 C.F.R. 240.14a-9, and Regulation G, 17 C.F.R. § 244.100 in connection with the proposed merger ("Proposed Merger") between PHH and Ocwen Financial Corporation ("Ocwen").[1]

2.    On February 27, 2018, the Board caused the Company to enter into an Agreement and Plan of Merger (the "Merger Agreement") pursuant to which Company shareholders will receive $11.00 per share in cash for each share of Company common stock they own (the "Merger Consideration"), a deal valued at $360 million.

---

[1]    In accordance with Local Rule 10.1, Plaintiff provides the following information regarding the named parties: (i) Plaintiff is a shareholder of PHH common stock who can be reached at Greg Smith, c/o Faruqi & Faruqi, LLP, 685 Third Avenue, 26th Floor, New York, NY 10017; (ii) Defendant PHH Corporation maintains its principal executive offices at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054; (iii) Individual Defendant James O. Egan's address is 202 Fairmount Road, Ridgewood, NJ 07450; (iv) Individual Defendant Jane D. Carlin's address is 906 President Street, Brooklyn, NY 11215; (v) Individual Defendant James C. Neuhauser's address is 24 Dovetail, Irvine, CA 92603; (vi) Individual Defendant Charles P. Pizzi's address is 8601 Thomas Mill Terrace, Philadelphia, PA 19128; (vii) Individual Defendant Kevin Stein's address is 4 Terrace Court, Port Washington, NY 11050; (viii) Individual Defendant Carroll R. Wetzel, Jr.'s address is 1248 Greacen Point Road, Mamaroneck, NY 10543; and (ix) Individual Defendant Robert B. Crowl's address is 740 Mill Street, Moorestown, NJ 08057.

3.      On April 6, 2018, in order to convince PHH shareholders to vote in favor of the Proposed Merger, the Board authorized the filing of a materially incomplete and misleading PREM 14A Preliminary Proxy Statement (the "Proxy") with the Securities and Exchange Commission ("SEC"), in violation of Sections 14(a) and 20(a) of the Exchange Act.  The materially incomplete and misleading Proxy independently violates both Regulation G (17 C.F.R. § 244.100) and SEC Rule 14a-9 (17 C.F.R. 240.14a-9), each of which constitutes a violation of Section 14(a) and 20(a) of the Exchange Act.

4.      While touting the fairness of the Merger Consideration to the Company's shareholders in the Proxy, Defendants have failed to disclose certain material information that is necessary for shareholders to properly assess the fairness of the Proposed Merger, thereby violating SEC rules and regulations and rendering certain statements in the Proxy materially incomplete and misleading.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning the financial projections for the Company that were prepared by the Company and relied upon by the Board in recommending that Company shareholders vote in favor of the Proposed Merger.  The financial projections were also utilized by PHH's financial advisor, Credit Suisse Securities (USA) LLC ("Credit Suisse"), in conducting the valuation analyses in support of its fairness opinion that the consideration to be received by PHH via the Proposed Merger was fair from a financial point of view to the Company. Proxy 42.  Further, the Proxy omits material information regarding the Company's confidentiality agreements it reached with 38 strategic parties during the sales process. Proxy 32.

6.    It is imperative that the material information that has been omitted from the Proxy is disclosed prior to the shareholder vote in order to allow the Company's shareholders to make an informed decision regarding the Proposed Merger.

7.    For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act, based on Defendants' violation of: (i) Regulation G (17 C.F.R. § 244.100); and (ii) Rule 14a-9 (17 C.F.R. 240.14a-9). Plaintiff seeks to enjoin Defendants from holding the shareholder vote on the Proposed Merger and taking any steps to consummate the Proposed Merger unless, and until, the material information discussed below is disclosed to PHH shareholders sufficiently in advance of the vote on the Proposed Merger or, in the event the Proposed Merger is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act.

9.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10.    Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because PHH is headquartered in this District.

## PARTIES

11.     Plaintiff is, and at all relevant times has been, a holder of PHH common stock.

12.     Defendant PHH is incorporated in Maryland and maintains its principal executive offices at 3000 Leadenhall Road, Mt. Laurel, New Jersey 08054.  The Company's common stock trades on the NYSE under the ticker symbol "PHH."

13.     Individual Defendant James O. Egan has served as Non-Executive Chairman of the Board since 2009.

14.     Individual Defendant Jane D. Carlin has served as an Independent Director of the Company since 2012.

15.     Individual Defendant James C. Neuhauser has served as an Independent Director of the Company since 2017.

16.     Individual Defendant Charles P. Pizzi has served as an Independent Director of the Company since 2012.

17.     Individual Defendant Kevin Stein has served as an Independent Director of the Company since 2017.

18.     Individual Defendant Carroll R. Wetzel, Jr. has served as an Independent Director of the Company since 2010.

19.     Individual Defendant Robert B. Crowl has served as President and Chief Executive Officer since 2012 and as a Director of the Company since 2017.

20.     The Individual Defendants referred to in paragraphs 13-19 are collectively referred to herein as the "Individual Defendants" and/or the "Board."

## CLASS ACTION ALLEGATIONS

21.    Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 on behalf of himself and the other public shareholders of PHH (the "Class").  Excluded from the Class are Defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any Defendant.

22.    This action is properly maintainable as a class action because:

a.    The Class is so numerous that joinder of all members is impracticable. As of April 3, 2018, there were approximately 32,557,494 shares of PHH common stock outstanding.  The actual number of public shareholders of PHH will be ascertained through discovery;

b.    There are questions of law and fact that are common to the Class that predominate over any questions affecting only individual members, including the following:

i)    whether Defendants disclosed material information that includes non-GAAP financial measures without providing a reconciliation of the same non-GAAP financial measures to their most directly comparable GAAP equivalent in violation of Section 14(a) of the Exchange Act;

ii)    whether Defendants have misrepresented or omitted material information concerning the Proposed Merger in the Proxy in violation of Section 14(a) of the Exchange Act;

iii)    whether the Individual Defendants have violated Section 20(a) of the Exchange Act; and

5

iv)       whether Plaintiff and other members of the Class will suffer

irreparable harm if compelled to vote their shares regarding the

Proposed Merger based on the materially incomplete and

misleading Proxy.

c.       Plaintiff is an adequate representative of the Class, has retained

competent counsel experienced in litigation of this nature, and will fairly and adequately

protect the interests of the Class;

d.       Plaintiff's claims are typical of the claims of the other members of the

Class and Plaintiff does not have any interests adverse to the Class;

e.       The prosecution of separate actions by individual members of the Class

would create a risk of inconsistent or varying adjudications with respect to individual

members of the Class, which would establish incompatible standards of conduct for the

party opposing the Class;

f.       Defendants have acted on grounds generally applicable to the Class with

respect to the matters complained of herein, thereby making appropriate the relief

sought herein with respect to the Class as a whole; and

g.       A class action is superior to other available methods for fairly and

efficiently adjudicating the controversy.

## SUBSTANTIVE ALLEGATIONS

## I.       The Proposed Merger

23.       PHH is a subservicer of residential mortgages in the United States.  PHH

provides servicing and portfolio retention solutions to investors of mortgage servicing rights,

financial and wealth management institutions, regional and community banks, and credit

unions.

24.    On February 27, 2018, PHH issued a press release announcing the Merger

Agreement, which states in pertinent part:

> MOUNT LAUREL, N.J.--(BUSINESS WIRE)--PHH Corporation (NYSE: PHH) ("PHH" or the "Company") today announced that it has entered into a definitive agreement in which Ocwen Financial Corporation (NYSE: OCN) ("Ocwen") will acquire all of the Company's outstanding shares of common stock in an all cash transaction valued at $360 million, or $11.00 per fully-diluted share, representing a premium of 24% over the closing price of PHH's common stock of $8.84 on February 26, 2018. As part of the transaction, Ocwen will assume $119 million of PHH's outstanding unsecured debt.

> Robert B. Crowl, President and Chief Executive Officer of PHH Corporation, said, "We are pleased to have reached an agreement with Ocwen for the sale of our Company. This decision follows a comprehensive assessment of the risks and opportunities associated with operating the business and the strategic alternatives available to us. The Board and management believe the sale of the Company to Ocwen represents the best opportunity to maximize shareholder value."

> Ron Faris, President and Chief Executive Officer of Ocwen, commented, "The combination of Ocwen and PHH will result in a strong non-bank mortgage servicer with a robust servicing capability. Ocwen will significantly benefit from PHH's experienced workforce and their expertise on the MSP servicing platform. We look forward to the opportunity to provide our industry leading capabilities to PHH's customers and servicing clients."

25.    The Merger Consideration appears inadequate in light of the Company's recent

financial performance and prospects for future growth.  For instance, the Merger Consideration

represents a ***30% discount*** to the Company's 52-week high of $14.25 per share.  Further, the

Company has experienced positive Net Operating Cash Flow from Sales year-over-year since

2015.

26.    In sum, it appears that PHH is well-positioned for financial growth, and that the

Merger Consideration fails to adequately compensate the Company's shareholders.  It is

imperative that Defendants disclose the material information they have omitted from the Proxy,

discussed in detail below, so that the Company's shareholders can properly assess the fairness

of the Merger Consideration for themselves and make an informed decision concerning whether

or not to vote in favor of the Proposed Merger.

## II.    The Materially Incomplete and Misleading Proxy

27.    On April 6, 2018, Defendants caused the Proxy to be filed with the SEC in connection with the Proposed Merger.  The Proxy solicits the Company's shareholders to vote in favor of the Proposed Merger.  Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy misrepresents and/or omits both required and material information that is necessary for the Company's shareholders to make an informed decision concerning whether to vote in favor of the Proposed Merger, in violation of Sections 14(a) and 20(a) of the Exchange Act.

### *The Materiality of Financial Projections*

28.    A company's financial projections are material information a board relies upon to determine whether to approve a merger transaction and recommend that shareholders vote to approve the transaction.  Here, the financial projections were relied upon to approve the Merger Agreement and recommend the Proposed Merger to Company shareholders. The Proxy discloses that the financial projections were prepared by the Company's management and provided to the Board "to assist our board of directors in evaluating a possible transaction." Proxy 44.

29.    When soliciting proxies from shareholders, a company must furnish the information found in Schedule 14A (codified as 17 C.F.R. § 240.14a-101).  Item 14 of Schedule 14A sets forth the information a company must disclose when soliciting proxies regarding mergers and acquisitions.   In regards to financial information, companies are required to

disclose "financial information required by Article 11 of Regulation S-X[,]" which includes Item 10 of Regulation S-K. *See* Item 14(7)(b)(11) of 17 C.F.R. § 240.14a-101.

30.     Under Item 10 of Regulation S-K, companies are encouraged to disclose "management's projections of future economic performance that have a reasonable basis and are presented in an appropriate format." 17 C.F.R. § 229.10(b). Although the SEC recognizes the usefulness of disclosing projected financial metrics, the SEC cautions companies to "take care to assure that the choice of items projected is not susceptible of misleading inferences through selective projection of only favorable items." *Id.*

31.     In order to facilitate investor understanding of the Company's financial projections, the SEC provides companies with certain factors "to be considered in formulating and disclosing such projections[,]" including:

> (i)     When management chooses to include its projections in a Commission filing, ***the disclosures accompanying the projections should facilitate investor understanding of the basis for and limitations of projections.*** In this regard investors should be cautioned against attributing undue certainty to management's assessment, and the Commission believes that investors would be aided by a statement indicating management's intention regarding the furnishing of updated projections. ***The Commission also believes that investor understanding would be enhanced by disclosure of the assumptions which in management's opinion are most significant to the projections or are the key factors upon which the financial results of the enterprise depend and encourages disclosure of assumptions in a manner that will provide a framework for analysis of the projection.***

> (ii)    Management also should consider whether disclosure of the accuracy or inaccuracy of previous projections would provide investors with important insights into the limitations of projections. In this regard, ***consideration should be given to presenting the projections in a format that will facilitate subsequent analysis of the reasons for differences between actual and forecast results.*** An important benefit may arise from the systematic analysis of variances between projected and actual results on a continuing basis, since such disclosure may highlight for investors the most significant risk and profit-sensitive areas in a business operation.

17 C.F.R. § 229.10(b)(3) (emphasis added).

32.     As discussed further below, the financial projections here do not provide PHH's shareholders with a materially complete understanding of the assumptions and key factors,

which shareholders would find material since the Board's recommendation that shareholders vote in favor of the Proposed Merger was based, in part, on the following:

- our board of directors' knowledge of the PHH 2.0 business model and the business, prospects, financial performance and condition, financial and operating plans, capital levels and asset quality of the Company and the risks associated with the foregoing if the Company were to remain an independent public company;

- the strategic review processes undertaken by our board of directors over the course of the last few years (including the public, broad-based process to explore a sale of the Company or one or more of its principal businesses in 2016), and our board of directors' evaluation of the alternative means of creating stockholder value available to the Company, including continuing the PHH 2.0 plan as a standalone company and a liquidation of the Company, and the significant risks and uncertainties and value implications associated with these alternatives;

- the opinion, dated February 27, 2018, of Credit Suisse to the PHH board of directors as to the fairness, from a financial point of view and as of such date, of the merger consideration to be received by holders of PHH common stock pursuant to the merger agreement, which opinion was based on and subject to the assumptions made, procedures followed, matters considered and limitations and qualifications on the review undertaken as more fully described in "—*Opinion of the Company's Financial Advisor*;"

Proxy 41-42.

### *The Financial Projections are Materially Incomplete*

33.     The Proxy discloses certain financial projections for the Company on pages 44-46. However, the Proxy fails to provide material information concerning the projections, which were developed by the Company's management and relied upon by the Board in recommending that the shareholders vote in favor of the Proposed Merger. Proxy 41.

34.     Specifically, the Proxy provides values for: (1) EBIT; (2) Net Income; and (3) Adjusted Net Income, but fails to provide definitions, line items, or reconciliation for these metrics. Proxy 46. The Proxy states that "Net Income" is "[f]ollowing adjustment for interest expense, one-time expenses and income tax benefit/expenses"—an explanation that suggests that "Net Income" as referenced here is a non-GAAP measure—and that Adjusted Net Income

is "[f]ollowing adjustment for loss in contract adjustment (gross)[,]" but it does not disclose the values for any of these line items, or reconciliation of any of the three metrics to its most comparable GAAP equivalent. Proxy 46.

### The Financial Projections Violate Regulation G

35.    The SEC has acknowledged that potential "misleading inferences" are exacerbated when the disclosed information contains non-GAAP financial measures[2] and adopted Regulation G[3] "to ensure that investors and others are not misled by the use of non-GAAP financial measures."[4]  More specifically, the company must disclose the most directly comparable GAAP financial measure **and** a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP.  17 C.F.R. § 244.100.  This is because the SEC believes "this reconciliation will help investors . . . to better evaluate the non-GAAP financial measures . . . [and] more accurately evaluate companies' securities and, in turn, result in a more accurate pricing of securities."[5]

36.    Moreover, the SEC has publicly stated that the use of non-GAAP financial

---

[2]    Non-GAAP financial measures are numerical measures of future financial performance that exclude amounts or are adjusted to effectively exclude amounts that are included in the most directly comparable GAAP measure. 17 C.F.R. §244.101(a)(1).

[3]    Item 10 of Regulations S-K and S-B were amended to reflect the requirements of Regulation G.

[4]    United States Securities and Exchange Commission, *Final Rule: Conditions for Use of Non-GAAP Financial Measures* (2002), *available at* https://www.sec.gov/rules/final/33-8176.htm ("SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures*").

[5]    SEC, *Final Rule: Conditions for Use of Non-GAAP Financial Measures*.

measures can be misleading.[6]  Former SEC Chairwoman Mary Jo White has stated that the

frequent use by publicly traded companies of unique company-specific non-GAAP financial

measures (as PHH included in the Proxy here), implicates the centerpiece of the SEC's

disclosures regime:

> In too many cases, the non-GAAP information, which is meant to supplement the GAAP information, has become the key message to investors, crowding out and effectively supplanting the GAAP presentation.  Jim Schnurr, our Chief Accountant, Mark Kronforst, our Chief Accountant in the Division of Corporation Finance and I, along with other members of the staff, have spoken out frequently about our concerns to raise the awareness of boards, management and investors. And last month, the staff issued guidance addressing a number of troublesome practices *which can make non-GAAP disclosures misleading*: the lack of equal or greater prominence for GAAP measures; exclusion of normal, recurring cash operating expenses; individually tailored non-GAAP revenues; lack of consistency; cherry-picking; and the use of cash per share data.  I strongly urge companies to carefully consider this guidance and revisit their approach to non-GAAP disclosures.  I also urge again, as I did last December, that appropriate controls be considered and that audit committees carefully oversee their company's use of non-GAAP measures and disclosures.[7]

37.    Compliance with Regulation G is **mandatory** under Section 14(a), and non-

compliance constitutes a violation of Section 14(a).  Thus, in order to bring the Proxy into

compliance with Regulation G, Defendants must provide a reconciliation of the non-GAAP

financial measures to their respective most comparable GAAP financial measures.

---

[6]    *See, e.g.*, Nicolas Grabar and Sandra Flow, *Non-GAAP Financial Measures: The SEC's Evolving Views*, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measures-the-secs-evolving-views/; Gretchen Morgenson, *Fantasy Math Is Helping Companies Spin Losses Into Profits*, N.Y. Times, Apr. 22, 2016, http://www.nytimes.com/2016/04/24/business/fantasy-math-is-helping-companies-spin-losses-into-profits.html?_r=0.

[7]    Mary Jo White, *Keynote Address, International Corporate Governance Network Annual Conference: Focusing the Lens of Disclosure to Set the Path Forward on Board Diversity, Non-GAAP, and Sustainability* (June 27, 2016), https://www.sec.gov/news/speech/chair-white-icgn-speech.html (emphasis added) (footnotes omitted).

***The Financial Projections are Materially Misleading and Violate SEC Rule 14a-9***

38.     In addition to the Proxy's violation of Regulation G, the lack of reconciliation, or at the very least the line items utilized in calculating the non-GAAP measures renders the financial projections disclosed materially misleading as shareholders are unable to understand the differences between the non-GAAP measures and their respective most comparable GAAP financial measures.

39.     Such information is necessary to make the non-GAAP projections included in the Proxy not misleading.  Indeed, Defendants acknowledge the misleading nature of non-GAAP projections, as PHH shareholders are cautioned in the Company's 3Q 2017 earnings release: "[T]here are inherent limitations to these measures and they should not be viewed as a substitute for our results in accordance with GAAP as measurements of the Company's financial performance."[8]

40.     As such, in order to cure the materially misleading nature of the projections under SEC Rule 14a-9 as a result of the omitted information on pages 44-46, Defendants must provide a reconciliation table of the non-GAAP financial measures to the most comparable GAAP measures.

***The Materially Misleading Financial Analyses that Violate SEC Rule 14a-9***

41.     The financial projections at issue were relied upon by the Company's financial advisor, Credit Suisse, in connection with its valuation analyses and fairness opinion.  Proxy 46-51.  The opacity concerning the Company's internal projections renders the valuation analyses described below materially incomplete and misleading, particularly as companies

---

[8]     PHH Corporation, Current Report (Form 8-K), Exhibit 99.1 (Nov. 7, 2017), *available at:* https://www.sec.gov/Archives/edgar/data/77776/000007777617000029/phh20170930pressrelease.htm

formulate non-GAAP metrics differently.  Once a proxy statement discloses internal projections relied upon by the board, those projections must be complete and accurate.

42.     With respect to Credit Suisse's *Dividend Discount Analysis*, the Proxy states that Credit Suisse performed an analysis of the Company's consolidated operations to calculate the estimated present value of dividends that would be payable in fiscal years ending December 31, 2018 through December 31, 2026. Proxy 49-50.  However, despite disclosing that Credit Suisse based its calculation upon "financial forecasts and estimates prepared by the management of PHH," the Proxy never discloses: (i) which information from the forecasts was relied upon; (ii) the forecasted values for the dividends; nor (iii) their estimated present value. Proxy 50.

43.     Because the information from the forecasts used in Credit Suisse's calculation and the present and future values for the dividends were not disclosed, shareholders are unable to discern the veracity of the *Dividend Discount Analysis*.  Without further disclosure, shareholders are unable to compare Credit Suisse's calculations with the Company's financial forecasts.  Thus, the Company's shareholders are being materially misled regarding the value of the Company.

### Material Omissions with Regard to Confidentiality Agreements During the Sales Process

44.     Moreover, the Proxy states that the Company entered into confidentiality agreements with 38 of the 57 parties with whom the Company was engaged in strategic discussions prior to its eventual agreement with Ocwen.  Despite mentioning that the Company entered into confidentiality agreements with the parties, the Proxy is silent on the terms of these agreements—specifically, if the agreements contained any standstills or "don't ask, don't waive" provisions ("DADWs") that were in place.  Such information is material to PHH shareholders, as a reasonable shareholder would find it material to know whether or not other

parties that expressed interest in acquiring the Company were foreclosed from submitting superior proposals. The omission of this information renders the references to the confidentiality agreements in the Proxy incomplete and therefore misleading.

45.     In sum, the Proxy independently violates both: (i) Regulation G, which requires a presentation and reconciliation of any non-GAAP financial measure to its most directly comparable GAAP equivalent; and (ii) Rule 14a-9, since the material omitted information renders certain statements, discussed above, materially incomplete and misleading.  As the Proxy independently contravenes the SEC rules and regulations, Defendants violated Section 14(a) and Section 20(a) of the Exchange Act by filing the Proxy to garner votes in support of the Proposed Merger from PHH shareholders.

46.     Absent disclosure of the foregoing material information prior to the special shareholder meeting to vote on the Proposed Merger, Plaintiff and the other members of the Class will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Merger, and they are thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## <u>COUNT I</u>

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act
and 17 C.F.R. § 244.100 Promulgated Thereunder)**

47.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48.     Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the

protection of investors, to solicit or to permit the use of his name to solicit any Proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

49.     As set forth above, the Proxy omits information required by SEC Regulation G, 17 C.F.R. § 244.100, which independently violates Section 14(a). SEC Regulation G, among other things, requires an issuer that chooses to disclose a non-GAAP measure to provide a presentation of the "most directly comparable" GAAP measure, and a reconciliation "by schedule or other clearly understandable method" of the non-GAAP measure to the "most directly comparable" GAAP measure. 17 C.F.R. § 244.100(a).

50.     The failure to reconcile the numerous non-GAAP financial measures included in the Proxy violates Regulation G and constitutes a violation of Section 14(a).

## **COUNT II**

### **(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)**

51.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

52.     SEC Rule 14a-9 prohibits the solicitation of shareholder votes in Proxy communications that contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

53.     Regulation G similarly prohibits the solicitation of shareholder votes by "mak[ing] public a non-GAAP financial measure that, taken together with the information accompanying that measure, contains an untrue statement of a material fact or *omits to state a material fact necessary in order to make the presentation of the non-GAAP financial measure . . . not misleading*." 17 C.F.R. § 244.100(b) (emphasis added).

54.     Defendants have issued the Proxy with the intention of soliciting shareholder support for the Proposed Merger. Each of the Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things, the financial projections for the Company.

55.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as directors and/or officers, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

56.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Merger.

57.     The Individual Defendants knew or were negligent in not knowing that the

material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.

58.    The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.  The preparation of a Proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.  Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation of the Company's financial projections.

59.    PHH is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

60.    The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, who will be deprived of their right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Merger.

## COUNT III

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

61.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

62.    The Individual Defendants acted as controlling persons of PHH within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of PHH, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained

in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

63.    Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

64.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein and exercised the same.  The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Merger.  They were thus directly involved in preparing the Proxy.

65.    In addition, as described herein and set forth at length in the Proxy, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

66.    By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

67.    As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9

by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

68.     Plaintiff and the Class have no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Declaring that this action is properly maintainable as a Class Action and certifying Plaintiff as Class Representative and his counsel as Class Counsel;

B.     Enjoining Defendants and all persons acting in concert with them from proceeding with the shareholder vote on the Proposed Merger or consummating the Proposed Merger, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

C.     Directing the Defendants to account to Plaintiff and the Class for all damages sustained as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 26, 2018

Respectfully submitted,

**FARUQI & FARUQI, LLP**

By:     *s/ Innessa Melamed Huot*
　　　Innessa Melamed Huot
　　　685 Third Avenue, 26th Floor
　　　New York, New York 10017
　　　Telephone: 212-983-9330
　　　Facsimile: 212-983-9331
　　　ihuot@faruqilaw.com

**OF COUNSEL:**

**FARUQI & FARUQI, LLP**
Nadeem Faruqi
James M. Wilson, Jr.
685 Third Ave., 26th Fl.
New York, NY 10017
Tel.: (212) 983-9330
Email: nfaruqi@faruqilaw.com
Email: jwilson@faruqilaw.com

*Counsel for Plaintiff*

*Counsel for Plaintiff*